## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**WILLIAM TIMOTHY PARKER**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 2:19-CV-120-KS-MTP**

**MISSISSIPPI DEPARTMENT OF WILDLIFE,**
**FISHERIES, AND PARKS,** *et al.*                     **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendant Holifield's Motion to Strike [66], **grants** Defendant MDWFP's Motion to Dismiss [42], **denies** MDWFP's Motion for Summary Judgment [46], and **grants in part and denies in part** Defendant Holifield's Motion for Summary Judgment [50].

### I. BACKGROUND

Defendant Richard Holifield is a Conservation Officer for the Defendant Mississippi Department of Wildlife, Fisheries, and Parks ("MDWFP"). On the morning of August 4, 2018, he learned of a house fire in progress and called an officer of the Jones County Sheriff's Department, who asked him to help direct traffic at the scene. Holifield complied, setting up a roadblock with a marked law enforcement vehicle while wearing a uniform and bright-colored traffic vest.

The volunteer fire department contacted Plaintiff and asked him to bring a track hoe to remove the house's metal roof. Plaintiff loaded up the equipment and proceeded to the scene. When he arrived, Holifield was directing traffic. From here, the parties' stories diverge, and most of the facts are in dispute.

In Defendants' version of the story, Plaintiff barreled through the roadblock in an unmarked vehicle, striking Holifield in the process. When Holifield tried to arrest Plaintiff for driving through the roadblock, Plaintiff refused to comply with directions, failed to identify himself, would not explain what he was doing, and did not communicate that the firefighters had asked him to bring the track hoe. Plaintiff then turned back toward the cab of his truck, and Holifield believed it was possible that Plaintiff was retrieving a weapon. Holifield gave Plaintiff a warning, and after Plaintiff still refused to comply, Holifield tased him and arrested him. When Holifield eventually learned who Plaintiff was and why he was there, he allowed Plaintiff to assist the firefighters before taking him back into custody.

Plaintiff's version of the story is quite different. Plaintiff claims that Holifield did not have his blue lights on. Therefore, Plaintiff did not see Holifield until he suddenly walked out into the road in front of Plaintiff's truck. Plaintiff claims that he was unable to suddenly brake because 1) his truck uses a "jake brake" system, and 2) he was pulling a load in tight quarters as he turned into the property. So, he waved at Holifield to move out of the way. Plaintiff contends that Holifield knew the firemen asked him to bring the track hoe, but Holifield pursued him on foot, greeted him with profanity, and accused him of trying to kill someone. Plaintiff never threatened Holifield, touched him, lunged at him, or made any physically threatening movement. Rather, Plaintiff walked away from Holifield and started to unbind the track hoe for offloading. Then Holifield tased Plaintiff without warning. When Plaintiff fell, he hit

2

the track hoe or low boy and broke two ribs. Nearby citizens intervened, and Holifield eventually agreed to allow Plaintiff to use the track hoe to remove the house's roof. After the job was completed, Holifield took Plaintiff back into custody.

Holifield arrested Plaintiff on charges of simple assault, disorderly conduct, and disobeying traffic control devices. A justice court judge eventually found Plaintiff not guilty on each count. Plaintiff filed this lawsuit against Holifield and MDWFP, asserting a wide variety of claims. Numerous motions are ripe for review.

## II. MOTION TO STRIKE [66]

First, Defendant Holifield filed a Motion to Strike [66] an affidavit filed by Plaintiff in response to Holifield's Motion for Summary Judgment [50]. Plaintiff presented an affidavit [59-4] from former United States District Judge Charles Pickering. Defendant contends that the affidavit must be stricken because 1) Judge Pickering lacks personal knowledge of the relevant events, 2) the affidavit contains hearsay, 3) it contains undisclosed and improper expert testimony, and 4) its admission would be more prejudicial than probative. In response, Plaintiff argues that the affidavit is based on Judge Pickering's personal observations, that Holifield's own statements are admissible under Rule 801(d)(2), and that Judge Pickering's opinions are admissible under Rule 701.

The Court will address each paragraph of the affidavit in turn. Paragraph 1 provides:

> I am an adult resident citizen of Jones County, Mississippi. I had the pleasure and honor of serving as the County Prosecuting Attorney for

> Jones County, Mississippi. I did a limited amount of criminal defense work. I served as a United States District Judge for the Southern District of Mississippi and on the Fifth Circuit of Appeals.

Exhibit 4 to Response [59-4], at 1. The second, third, and fourth sentences of this paragraph are irrelevant to this case, in that Judge Pickering is a fact witness, not an expert witness. Moreover, they are unfairly prejudicial in that their only purpose is to bolster Judge Pickering's fact testimony. *See* FED. R. EVID. 403; *see Asset Funding Group, LLC v. Adams & Reese, LLP*, 2009 WL 10679972, at *1 (E.D. La. Nov. 4, 2009) (court ordered that no one shall refer to witness as "judge" to minimize undue influence on the jury); *Georgou v. Fritzshall*, 1995 WL 248002, at *5-*8 (N.D. Ill. Apr. 26, 1995) (court excluded testimony of former judge because of danger a jury would attach undue weight to it, citing Rule 403). Therefore, the Court grants Defendant's motion as to the second, third, and fourth sentences of paragraph 1, but denies it as to the first sentence. However, as with any eyewitness, Judge Pickering may state what he personally observed.

Paragraphs 2 and 3 contain undisputed background information regarding the events of the day in question, such as who owned the house, that it was on fire, that volunteer firemen responded to the fire, and that firemen requested that Plaintiff bring his track hoe to remove the house's metal roof. Based on Judge Pickering's testimony at Plaintiff's trial in Justice Court, *see* Exhibit B to Motion to Strike [66-2], the Court concludes that there is sufficient evidence in the record to demonstrate that Judge Pickering has personal knowledge of these undisputed background facts,

by virtue of his relationship to the homeowners and involvement in this matter. *See In re Green*, 968 F.3d 516, 524 (5th Cir. 2020) ("[P]ersonal knowledge does not necessarily mean contemporaneous knowledge."). The Court denies Defendant's motion as to paragraphs 2 and 3.

Paragraph 4 provides, in part: "On August 4, 2018, the exact time unknown to me, Tim Parker was called and he agreed to provide assistance to the volunteer firemen and the Dunkerton family to remove the metal roof in an attempt to control the fire." Exhibit 4 to Response [59-4], at 2. This sentence, like paragraphs 2 and 3, contains undisputed background information, and there is sufficient information in the record to demonstrate that Judge Pickering has personal knowledge of these events. Therefore, the Court denies Defendant's motion as to the first sentence of paragraph 4.

The second sentence of paragraph 4 provides: "It was apparent to me that the fire would continue to rage out of control without Mr. Parker's assistance." *Id.* First, Judge Pickering is not an expert witness, and the Court questions whether this opinion is appropriate for a lay witness. In other words, the Court believes that it would require specialized knowledge, skill, experience, training, or education to predict the course of a house fire. *See* FED. R. EVID. 702.

Regardless, for the opinion to be admissible, it must come in as a lay opinion. "Under Rule 701, a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the

jury. In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Miss. Chem. Co. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002); *see also* FED. R. EVID. 702. Plaintiff has not laid a foundation demonstrating the specific facts underlying the opinion, or that the opinion has a rational connection to those facts. The fact that Judge Pickering was there and saw the fire is not enough. Therefore, the Court grants Defendant's motion as to the second sentence of paragraph 4.

> Paragraph 5 provides, in part:
>
> Mr. Parker agreed to and responded with a track hoe on a lowboy. As Mr. Parker neared his destination, the Dunkerton residence, he encountered Richard Holifield, a MDWFP Conservation Officer. After Mr. Parker arrived at the Dunkerton residence Officer Holifield employed a taser while Mr. Parker was attempting to unload the track hoe, which resulted in Mr. Parker falling to the ground. After the volunteer firemen pleaded with Officer Holifield to let him help fight the fire Officer Holifield told the volunteer firemen he would tase them if they didn't back up.

Exhibit 4 to Response [59-4], at 2. Judge Pickering directly testified in Justice Court: "I did not see the stop, and I didn't see the tasing. I did ask them both about what had happened up at the stop." Exhibit B to Motion to Strike [66-2], at 10. Therefore, the Court concludes that Plaintiff has not demonstrated that Judge Pickering has personal knowledge of these events, and the Court grants Defendant's motion as to the first four sentences of paragraph 5.

> Based on Judge Pickering's testimony before the Justice Court, *id.* at 3-9, the

6

Court concludes that the remainder of paragraph 5, Exhibit 4 to Response [59-4], at 2-3, describes events which occurred after he got involved, and, therefore, it is based on his personal knowledge. However, Defendant argues that the affidavit contains hearsay – namely, his own out-of-court statements. Judge Pickering's account of Defendant's own statements is admissible here as an opposing party's statement. FED. R. EVID. 702(d)(2). Therefore, the Court denies Defendant's motion as to the remainder of paragraph 5.

In paragraph 6, Judge Pickering stated:

> Based upon my personal observations, I can unquestionably state that in my years as a County Prosecuting Attorney, criminal defense lawyer and as a Federal Judge, I have never witnessed such abuse and misuse of power by any law enforcement officer under the circumstances existing in this case. Mr. Parker attempted to explain to Officer Holifield that his service to the Dunkerton family was critical in not only controlling the fire but saving some of the memorabilia of my granddaughter who had died from cancer. Officer Holifield's conduct, in my opinion, was inappropriate and my observations clearly support my conclusion that his use of force was excessive and was an absolute abuse of his power as an officer of the law. In fact, it was the worse [sic] abuse of power I have scene [sic] in my sixty years at the bar and bench. Officer Holifield called and asked if he could come and be of help in fighting the fire and he completely ignored the reason for his being there and interfered with the fighting of the fire.

Exhibit 4 to Response [59-4], at 3-4. This testimony is wholly inappropriate, regardless of whether Judge Pickering is a lay or expert witness.

Generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue" in a case. FED. R. EVID. 704(a). But witnesses are not allowed to "tell the jury what result to reach . . . ." *Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303,

7

1311 (5th Cir. 1985). Moreover, a witness "may never render conclusions of law," *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009), or opinions on legal issues. *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999). Applying these principles, the Fifth Circuit has specifically held that the reasonableness of an officer's use of force is a legal conclusion. *Pratt v. Harris County, Tex.*, 822 F.3d 174, 181 (5th Cir. 2016); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012). It has also affirmed this Court's exclusion of opinion testimony regarding the reasonableness of an officer's use of force. *Albert v. City of Petal*, 819 F. App'x 200, 202 (5th Cir. 2020). Therefore, the Court finds that paragraph 6 of Judge Pickering's affidavit must be stricken because it contains numerous inadmissible legal conclusions. Alternatively, the Court finds that paragraph 6 should be stricken pursuant to Rule 403.

For all these reasons, the Court **grants in part and denies in part** Defendant Holifield's Motion to Strike [66] as provided above.

### III. MOTION TO DISMISS [42]

Defendant MDWFP filed a Motion to Dismiss [42] certain claims asserted by Plaintiff. The Court will construe the motion as one seeking judgment on the pleadings under Rule 12(c). Motions for judgment on the pleadings are subject to the same standard of review as a motion under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

First, MDWFP argues that Plaintiff's § 1983 claims against it must be dismissed because Mississippi has not waived its sovereign immunity. MDWFP notes that Plaintiff seeks damages only, rather than prospective or injunctive relief. MDWFP also argues that it is not a "person" within the meaning of § 1983 because it is a state agency. In response, Plaintiff concedes that his § 1983 claims against MDWFP should be dismissed.

Next, MDWFP argues that Plaintiff's claims for punitive damages and attorneys' fees against it under state law must be dismissed because they are specifically barred by the Mississippi Tort Claims Act ("MTCA"). In response, Plaintiff concedes that his claims for punitive damages and attorneys' fees are barred

by the MTCA.

Therefore, for these reasons, the Court **grants** Defendant MDWFP's Motion to Dismiss [42]. Plaintiff's § 1983 claims against Defendant MDWFP and his claims for punitive damages and attorneys' fees against MDWFP under the MTCA are dismissed.

### IV. MOTION FOR SUMMARY JUDGMENT (MDWFP) [46]

Defendant MDWFP filed a Motion for Summary Judgment [46] as to Plaintiff's claims under the MTCA. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding

whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

MDWFP argues that it enjoys immunity from liability because Plaintiff was engaged in criminal activity, citing the MTCA's police-function exemption. MDWFP also argues that it cannot be liable because Holifield did not act with reckless disregard. The MTCA codified the common-law sovereign immunity of Mississippi and its political subdivisions, MISS. CODE ANN. § 11-46-3(1), but it waived sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). The waiver is subject to numerous conditions, exceptions, and limitations, including the police-function exemption.

The statute provides:

(1)     A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

* * *

(c)     Arising out of any act or omission of an employee of a governmental entity engaged in the performance or

11

> execution of duties or activities relating to police or fire
> protection unless the employee acted in reckless disregard
> of the safety and well-being of any person not engaged in
> criminal activity at the time of the injury.

MISS. CODE ANN. § 11-46-9(1)(c). The plaintiff's alleged criminal activity must have

"some causal nexus to the wrongdoing of the tortfeasor." *Buchanan v. Gulfport Police

Dep't*, 2012 WL 1906523, at *12 (S.D. Miss. May 25, 2012). That is, "[t]he criminal

activity must occur contemporaneously with the injury; it is not sufficient that his

earlier conduct was criminal." *Id.*

     "Reckless disregard . . . denotes more than negligence, but less than an

intentional act." *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 1989). The

Mississippi Supreme Court has found "reckless disregard when the conduct involved

evinced not only some appreciation of the unreasonable risk involved, but also a

deliberate disregard of that risk and the high probability of harm involved." *Id.* The

reckless disregard standard "embraces willful or wanton conduct which requires

knowingly and intentionally doing a thing or wrongful act." *Phillips v. Miss. Dep't of

Public Safety*, 978 So. 2d 656, 661 (Miss. 2008). Neither negligence nor gross

negligence arise to the level of "reckless disregard." *See Jones v. City of Hattiesburg*,

2018 WL 3624978, at *3 (S.D. Miss. July 30, 2018); *Collins v. City of Newton*, 240 So.

3d 1211, 1222 (Miss. 2018).

## A.   *Criminal Activity*

     First, Plaintiff presented enough evidence to create a genuine dispute of

material fact as to whether he was engaged in criminal activity. It appears to be

undisputed that Plaintiff was acquitted of all charges arising from this incident. *See Mahoney v. City of Jackson*, 2008 WL 2990906, at *11 (S.D. Miss. July 25, 2008) (where plaintiff had been acquitted of all charges, there was a question of fact as to whether he was engaged in criminal activity).

There is also a genuine dispute of material fact as to whether, under the circumstances, Plaintiff actually drove recklessly. Therefore, there is a genuine dispute as to whether Holifield had a lawful reason to stop or arrest Plaintiff in the first place. One witness at Plaintiff's criminal trial, a fireman who was in a tanker truck behind Plaintiff's truck, testified that Plaintiff was only going about 15-20 miles per hour as they approached the scene. Exhibit 2 to Response [59-2], at 4. The same witness testified that he did not see a "road block sign or . . . where the game warden was at when [Plaintiff] made entry to the scene." *Id.* at 5.

Another witness testified that he told Holifield that the firemen had "called for a track hoe to tear the top off the house where they can extinguish the fire." Exhibit 2 to Response [54-2], at 21. In fact, Holifield admitted that he learned the firemen had called for the track hoe just ten minutes before Plaintiff arrived, *id.* at 5-6, and that he knew it when Plaintiff passed him. *Id.* at 11. Finally, Judge Pickering testified that there was no physical indication that Holifield had been injured, *id.* at 23, and Holifield admitted that there was no injury, despite claiming that Plaintiff's truck hit him. *Id.* at 11.

Therefore, Plaintiff has presented sufficient evidence to create a genuine

dispute of material fact as to whether his vehicle struck Holifield, i.e. whether he committed simple assault on an officer. Likewise, Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether he drove recklessly and disobeyed traffic control devices. If Plaintiff did not assault Holifield or disobey traffic control devices, then Holifield had no reason to arrest him. Under Mississippi law, "[t]he offense of resisting arrest presupposes a lawful arrest," and "[a] person has the right to use reasonable force to resist an unlawful arrest." *Taylor v. State*, 396 So. 2d 39, 42 (Miss. 1981). Accordingly, the Court concludes that there are genuine disputes of material fact as to whether Plaintiff was engaged in criminal activity at the relevant points in time.

**B.    *Reckless Disregard***

There is also a genuine dispute of material fact as to whether Holifield acted with reckless disregard to Plaintiff's safety and well-being. As noted above, there is evidence in the record from which one could reasonably infer that Plaintiff's vehicle did not actually strike Holifield, despite Holifield's claim to the contrary. Exhibit 2 to Response [54-2], at 11, 23. Plaintiff testified that the first thing Holifield said to him was, "You sorry son of a bitch, you tried to kill me." Exhibit 1 to Response [54-1], at 13. According to Plaintiff, Holifield "was so irate he would not listen . . . ." *Id.* at 31. However, the record contains evidence that Holifield knew that the firemen had requested Plaintiff to bring the track hoe. Exhibit 2 [54-2], at 5-6, 11, 21.

Moreover, Holifield admitted that Plaintiff did not lunge at him, take a swing

at him, hold a weapon, or otherwise physically threaten him. Exhibit 3 [54-3], at 5. In fact, Holifield testified at Plaintiff's trial that Plaintiff displayed hostility in "the manner in which he asked the questions." Exhibit 2 [54-2], at 14. He testified: "[W]hen I told him to turn around and place his hands behind his back and he said why. It was the manner in which he said it. It was . . . real loud, kind of aggressive." *Id.* at 15. Finally, Plaintiff testified that Holifield provided no warning before tasing him. Exhibit 1 [54-1], at 15.

It is undisputed that Holifield then temporarily released Plaintiff and allowed him to assist the firemen by operating the track hoe. To be clear, Defendants contend that Plaintiff barreled through a police traffic barricade in a tractor-trailer, and that he posed such a threat to Holifield's safety that it was reasonable to put him down with a taser, yet Holifield then released Plaintiff from custody and allowed him to operate a piece of heavy machinery. A reasonable person could interpret this sequence of events as indicating that Plaintiff did not pose a significant threat in the first place.

Finally, Holifield admitted under oath that he had to arrest and charge Plaintiff because otherwise there would be no probable cause for him to have used the taser. Exhibit 2 [54-2], at 18. In fact, Plaintiff testified that Holifield said he was arresting Plaintiff because "I've [Holifield] used excessive force." Exhibit 1 [54-1], at 18.

In the Court's opinion, all of these disputed facts are material to the question of whether Holifield acted with reckless disregard for Plaintiff's safety and well-being.

They go to whether his version of the story is credible, and whether his use of the taser was reasonable under the circumstances.

**C.   *Summary***

As noted above, the parties have presented two very different versions of events. In Defendant's version of the story, Plaintiff barreled through a law enforcement checkpoint while playing fireman, injured an officer, and then refused to identify himself or what he was doing. In Plaintiff's version, a hotheaded game warden playing policeman got offended when Plaintiff was unable to stop a tractor-trailer quickly enough, tased Plaintiff without warning or provocation, and then arrested him on drummed-up charges to cover for his own lack of impulse control. The bottom line is that there are numerous substantial and material disputed facts, and the Court needs to observe the witnesses and parties testify in a live hearing before it can make findings of fact on Plaintiff's MTCA claims. Therefore, the Court **denies** MDWFP's Motion for Summary Judgment [46].

## V. MOTION FOR SUMMARY JUDGMENT (HOLIFIELD) [50]

Defendant Holifield filed his own Motion for Summary Judgment [50] as to all Plaintiff's claims against him. He asserted several different arguments, and the Court will address each in turn.

**A.   *Section 1983 Claims***

First, Holifield argues that he is entitled to qualified immunity against Plaintiff's § 1983 claims of excessive force and unreasonable seizure/false arrest/false

16

imprisonment. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236.

1.    *Excessive Force*

"To prevail on a Section 1983 excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019). This inquiry is "confined to whether the officer was in danger at the moment of the threat that resulted in the" use of force. *Id.* "Therefore, any of the officers' actions leading up to the shooting are not relevant." *Id.*

In excessive force cases, officers are generally entitled to qualified immunity

"even when [they] act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous situation, or when the law governing their behavior in particular circumstances is unclear." *Mason v. Paul*, 929 F.3d 762, 763 (5th Cir. 2019). Moreover, courts are not permitted to "hold officers liable from the safety of our 20/20 vision of hindsight for decisions taken in a split-second under potentially life-threatening conditions." *Id.* Rather, the Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

"[W]hat matters is what the defendant . . . knew when" he used force. *Cole*, 935 F.3d at 456. The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "Although officers may need to use physical force to effectuate a suspect's compliance when he refuses to comply with commands during a traffic stop, the officers still must assess the relationship between the need and the amount of force used." *Newman v. Guidry*, 703 F.3d 757, 763 (5th Cir. 2012). For example, the Fifth Circuit has held that a jury could reasonably find that the use of force was objectively unreasonable when "officers

18

immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands." *Id.* (punctuation and internal citations omitted); *see also Deville*, 567 F.3d at 167-68.

In light of the numerous factual disputes highlighted above – such as what Holifield knew at the time he applied force, how Plaintiff acted, whether Plaintiff's vehicle struck Holifield, whether Plaintiff was driving recklessly, whether Holifield had his blue lights on, whether Holifield was effecting a lawful arrest, whether Holifield warned Plaintiff before tasing him, and the severity of Plaintiff's alleged crime, among others – the Court finds that there are genuine disputes of material fact that must be resolved before the Court can address Holifield's entitlement to qualified immunity on the excessive force claim. The Court is mindful that it must pay "careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, and here there are simply too many disputes on key facts relevant to both the elements of an excessive force claim and the objective reasonableness of Holifield's actions. The Court denies Holifield's motion for summary judgment as to Plaintiff's § 1983 excessive force claim.

2.    *False Arrest/Imprisonment, Unreasonable Seizure*

To prevail on a § 1983 claim for false arrest or imprisonment, Plaintiff must prove that Defendant did not have probable cause to arrest him. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). "Probable cause is established by facts and circumstances within the

officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). "When considering what a reasonable person would have concluded, we take into account the expertise and experience of the law enforcement officials." *United States v. Nunez-Sanchez*, 478 F.3d 663, 667 (5th Cir. 2007). It doesn't matter whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Likewise, it doesn't matter if the arrestee was ever charged or convicted of the crime for which the officer arrests him. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime." *Id.*

In light of the numerous factual disputes highlighted above – such as what Holifield knew at the time he tried to arrest Plaintiff, how Plaintiff acted, whether Plaintiff's vehicle struck Holifield, whether Plaintiff was driving recklessly, and whether Holifield had his blue lights on, among others – the Court finds that there are genuine disputes of material fact that must be resolved before the Court can address Holifield's entitlement to qualified immunity on the false arrest/imprisonment claim. Indeed, the factual disputes highlighted in this opinion

are relevant to both the question of whether Holifield had probable cause to arrest Plaintiff and the objective reasonableness of Holifield's actions. The Court denies Holifield's motion for summary judgment as to Plaintiff's § 1983 false arrest/imprisonment claim.

## B.    *State-Law Claims*

Holifield also argues that the Court should grant summary judgment as to Plaintiff's state-law claims of assault, battery, and false arrest/imprisonment, all asserted against him in his individual capacity.

First, Holifield argues that he cannot be personally liable for acts or omissions occurring within the course and scope of his employment by MDWFP. Defendant is correct that, under the MTCA, government employees can not be personally liable for "acts or omissions occurring within the course and scope of [their] duties." MISS. CODE ANN. § 11-46-7(2). However, a government employee is not "acting within the course and scope of his employment" if his conduct "constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." *Id.* This Court has previously held that both assault and battery constitute "some form of malice or criminal offense," and, therefore, are not actions within the course and scope of employment under the MTCA. *See Brown v. Wilkinson County Sheriff's Dep't,* 2017 WL 1479428, at *9 (S.D. Miss. Apr. 24, 2017). False imprisonment, on the other hand, is within the scope of the MTCA, *Jones v. Browning,* 2020 WL 265210, at *7 (S.D. Miss. Jan. 17, 2020) (citing cases), and Holifield can not be liable for that claim

because it relates to conduct within the course and scope of his duties. *Crawford v. Desoto County Sheriff's Dep't*, 419 F. Supp. 3d 965, 972 (N.D. Miss. 2020). Therefore, the Court grants Holifield's motion as to Plaintiff's state-law false arrest/imprisonment claim.

Holifield also argues that he is entitled to qualified immunity from liability because the police-function exemption applies. For the same reasons provided above in the Court's discussion of MDWFP's Motion for Summary Judgment [46], the Court finds that there are genuine disputes of material fact which preclude summary judgment on this basis.

## VI. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendant Holifield's Motion to Strike [66], **grants** Defendant MDWFP's Motion to Dismiss [42], **denies** MDWFP's Motion for Summary Judgment [46], and **grants in part and denies in part** Defendant Holifield's Motion for Summary Judgment [50].

SO ORDERED AND ADJUDGED this 9th day of April, 2021.

/s/      Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE
